UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GREGORY BERNARD,

                       Petitioner,

                                         No. 15-CV-6537(MAT)
       -vs-                          **DECISION AND ORDER**

PAUL CHAPPIUS, JR.,

                       Respondent.

_____

**I. Introduction**

*Pro se* petitioner Gregory Bernard("petitioner" or "Bernard") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being unconstitutionally detained in respondent Paul Chappius, Jr.'s ("respondent") custody. Petitioner is incarcerated pursuant to judgments of conviction entered against him on May 29, 2008 and September 25, 2008, in Monroe County Court of New York State ("Monroe County Court" or the "trial court"), following jury verdicts convicting him of murder in the second degree and criminal possession of a weapon in the second degree. Petitioner was sentenced to a determinate prison term of 12½ years on the weapon possession count, and a concurrent indeterminate prison term of 25 years to life on the murder count.

In the petition, petitioner asserts that his continued incarceration is unconstitutional because: (1) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to timely disclose certain grand jury testimony; and (2) the trial

court denied him due process by failing to *sua sponte* reopen its pre-trial hearing on the admissibility of certain identification evidence following the disclosure of the grand jury testimony. For the reasons discussed below, the Court finds that petitioner has not shown he is entitled to federal habeas relief.

**II. Factual Background and Procedural History**

    **A. The Underlying Crime and Investigation**

Petitioner's convictions arise out of the shooting death of Raymundo Rodriguez on September 9, 2007. In September 2007, petitioner was involved in selling heroin and cocaine from Cynthia Bashaw's backyard on Clifford Avenue in Rochester. Ms. Bashaw testified at petitioner's first trial[1] that petitioner would obtain the drugs from Steven Rivera, who was known to her as "Crown," and from a second individual known to her as "Josh." Ms. Bashaw further testified that she permitted petitioner, Mr. Rivera, and "Josh" to store drugs and three handguns in her bedroom dresser.

In the early morning of September 9, 2007, Ms. Bashaw was in bed when she heard a lot of noise coming from outside. She subsequently discovered petitioner, Mr. Rivera, and "Josh" in her driveway. Ms. Bashaw let "Josh" into her apartment, whereupon he removed something from her dresser and then left. After his

---

[1] As discussed further below, petitioner's first trial resulted in a conviction on the weapon possession charge, but the jury was unable to reach a verdict on the murder count. Petitioner was convicted of second-degree murder after a second jury trial.

-2-

departure, Ms. Bashaw noticed that the three handguns, which she had seen earlier that day, were missing from her dresser.

Also in the early morning of September 9, 2007, Josue Torres left a hip-hop club in Rochester and drove to an after-hours party at a house on Roycroft Drive. Mr. Torres testified that after attending the party for 15 to 20 minutes, he exited the house and spoke to Mr. Rivera, whom he had known since childhood. Mr. Torres further testified that Mr. Rivera then went over to a group of four men standing nearby and that he witnessed handguns being passed around before hearing one of the men say "let's bust him," which Mr. Torres understood to mean they intended to shoot someone. As. Mr. Torres walked away, he heard a shot. He looked back and saw petitioner, Mr. Rivera, and a third man shooting at Mr. Rodriguez. Mr. Torres testified that he heard one of the men say "this is for my cousin, this is for my cousin" as they shot at Mr. Rodriguez. Mr. Torres hid behind his truck, and the three shooters ran away, passing by him. Mr. Rodriguez died at the scene of multiple gunshot wounds.

At approximately 3:30 a.m. on September 9, 2007, Rochester Police Department ("RPD") Officers Korey McNees and Nicholas Gulla responded to the scene on Roycroft Drive. Officer McNees testified that Mr. Rodriguez's body was lying on the ground along with shell casings and projectiles.

Ms. Bashaw testified that sometime after 4:00 a.m. that same day, she was awoken when Mr. Rivera's truck pulled into her driveway playing loud music. Ms. Bashaw saw petitioner, Mr. Rivera, "Josh," and a fourth individual known to her as "Punto." "Josh" entered her bedroom and then left again. After his departure, Ms. Bashaw looked in her dresser and saw two guns. Ms. Bashaw further testified that later that day, she and petitioner were in her backyard and petitioner told her that he had shot an individual named "Ray-Ray" at an after-hours party and that he was going to get away with it.

Mr. Torres was interviewed by the RPD the day after the shooting. He told the RPD that Mr. Rivera was one of the shooters and provided physical descriptions of the other two shooters.

On September 27, 2007, RDP Officer Myron Moses executed a search warrant for Ms. Bashaw's apartment. Officer Moses recovered two handguns from her dresser, along with a .22 caliber live round and a quantity of suspected cocaine, heroin, and ecstasy pills.

On September 28, 2007, the RPD presented a photographic array to Mr. Torres and Mr. Torres identified petitioner as one of the shooters. The details of this identification are discussed further below.

On October 11, 2007, petitioner was interviewed by RPD Investigator Gary Galetta. Petitioner was given his *Miranda* warnings and agreed to speak to Investigator Galetta. Petitioner

told investigator Galetta that he sold drugs on Clifford Avenue for Mr. Rivera. Petitioner further stated that he had been at the after-hours party where Mr. Rodriguez was killed, but claimed that he gave his handgun to Josh and that Josh and Mr. Rivera were the ones who fired at Mr. Rodriguez. Petitioner then traveled to Clifford Avenue in Mr. Rivera's vehicle. Later in the same interview, petitioner changed his story, and claimed that the shooters were actually individuals known to him as "Willie B" and "Collie Bling."

Ballistics analysis was performed on the two handguns recovered from Ms. Bashaw's apartment. This analysis showed that two .40 caliber shell casings and a projectile found at the scene of Mr. Rodriguez's shooting were fired from a semi-automatic pistol recovered from Ms. Bashaw's apartment. Additionally, two .38 caliber projectiles or bullets recovered at the shooting scene were fired from the revolver recovered from Ms. Bashaw's apartment. Police also recovered a .45 caliber shell casing from the shooting scene, which was not fired from either of the guns recovered from Ms. Bashaw's apartment.

### B. Pre-trial Proceedings

Prior to petitioner's first trial, petitioner moved to suppress Mr. Torres' identification of him. The trial court held a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether the identification procedure by which Mr.

Torres identified petitioner as one of the shooters (namely, the photographic array) was unduly suggestive. At the *Wade* hearing, RPD Sergeant Mark Mariano testified that, on September 28, 2007, he showed a photograph array to Mr. Torres[2] and that Mr. Torres identified petitioner, stating "he is one of the shooters." Investigator Galetta then wrote "he was one of the shooters" next to petitioner's picture.

On April 11, 2008, the trial court denied petitioner's motion to suppress, finding that the photographic array was fair and not unduly suggestive and that the police did not engage in suggestive conduct.

After the *Wade* hearing, but before the commencement of trial, the prosecution disclosed to petitioner a transcript of Mr. Torres' grand jury testimony. Before the grand jury, Mr. Torres testified that, when he identified petitioner from the photographic array, he told the police that he "wasn't sure" about the identification. Defense counsel subsequently moved to dismiss the indictment on the basis that the evidence presented was legally insufficient or, in the alternative, to preclude Mr. Torres from identifying petitioner at trial. Defense counsel did not, however, move to reopen the *Wade* hearing or request an adjournment. The people opposed petitioner's motion, arguing that it was based on a selective

---

[2] At the time of the *Wade* hearing, Mr. Torres had not been identified as the witness, and Sergeant Mariano therefore referred to him as an unnamed witness. For clarity, the Court refers to him by name.

-6-

reading of Mr. Torres' grand jury testimony. The trial court denied petitioner's request to dismiss the indictment and stated that it would wait until the appropriate time at trial to address any other objections.

**C.   Petitioner's First Trial and Sentencing**

Petitioner's first trial commenced on April 21, 2008. During the course of trial, defense counsel moved to suppress Mr. Torres' identification of petitioner, and the Court denied that request. The jury found petitioner guilty of criminal possession of a weapon in the second degree, but was unable to reach a verdict on the charge of murder in the second degree. The trial court accepted a partial verdict. On May 29, 2008, petitioner was sentenced to 12½ years on the weapon possession count.

**D.   Petitioner's Second Trial and Sentencing**

Petitioner's second trial commenced on September 8, 2008. At no time prior to commencement of his second trial did petitioner move to reopen the *Wade* hearing. The jury at petitioner's second trial found him guilty of murder in second degree. On September 25, 2008, petitioner was sentenced to 25 years to life with respect to the murder conviction, to run concurrently with his sentence on the weapon possession conviction.

**E.   Direct Appeal**

Petitioner took a consolidated direct appeal of both convictions, arguing in relevant part that (1) the prosecution

failed to timely disclose exculpatory evidence, in violation of *Brady* and (2) the trial court erred in failing to reopen the *Wade* hearing based upon Mr. Torres' belatedly disclosed grand jury testimony. The Appellate Division, Fourth Department (the "Appellate Division") entered two decisions on March 21, 2014 affirming petitioner's judgments of conviction. The Appellate Division found that the prosecution did in fact fail to timely disclose *Brady* material. However, the Appellate Division further concluded that the belated disclosure did not warrant reversal of petitioner's conviction because he was afforded a meaningful opportunity to make use of the information on cross-examination and because there was "no reasonable probability that, had the evidence been disclosed to [petitioner] prior to the *Wade* hearing, the result of the [hear]ing would have been different." *People v. Bernard*, 115 A.D.3d 1214, 1215 (2014) (internal quotation omitted). With respect to petitioner's argument that the trial court should have reopened the *Wade* hearing based on the belated disclosure, the Appellate Division found that this argument was unpreserved. *Id*.

Petitioner sought leave to appeal to the New York Court of Appeals (the "Court of Appeals") with respect to all the claims he raised before the Appellate Division. The Court of Appeals denied his request on June 12, 2014.

### F. The Instant Petition

Petitioner commenced this action on September 10, 2015. Petitioner contends that he is entitled to habeas relief because (1) the prosecution violated *Brady* by failing to timely disclose Mr. Torres' grand jury testimony and (2) the trial court denied him due process by failing to *sua sponte* reopen the *Wade* hearing in light of that delayed disclosure.

## III. Discussion

### A. Standard of Review

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (internal quotation omitted). "The question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)). "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the

Supreme] Court's precedents.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

**B.     The Prosecution's Belated Disclosure of *Brady* Material**

Petitioner's first argument is that his conviction was unconstitutionally obtained because the prosecution failed to timely disclose *Brady* material - namely, Mr. Torres' grand jury testimony.

"The prosecution's Brady obligation is well-known: [t]o the extent that [a] prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation [grounded in the 14th Amendment] to disclose that evidence to the defendant." *DiSimone v. Phillips*, 461 F.3d 181, 192 (2d Cir. 2006) (internal quotation omitted). The Supreme Court has identified "'three components of a true Brady violation' . . . '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Id*. (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "[E]ven where there has been a *Brady* violation, a defendant is not entitled to reversal unless he can show that the delayed disclosure caused him prejudice." *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990).

In this case, the Appellate Division found that there had been a *Brady* violation but that reversal was not warranted because petitioner had failed to demonstrate any prejudice. The Appellate Division's determination was neither contrary to, nor an unreasonable application of, established federal law. As set forth above, where the prosecution fails to timely disclose *Brady* material, reversal is warranted only where prejudice has ensued. No prejudice has been demonstrated in this case. Mr. Torres' grand jury testimony was disclosed prior to trial, and defense counsel made use of it during cross-examination. Indeed, Mr. Torres acknowledged on cross-examination that he had told the grand jury that he wasn't sure during the photographic array if petitioner was one of the shooters, though he explained on redirect that he had hesitated in his identification of petitioner based on fear, and not on any true doubt about petitioner's identity. The use of late-disclosed *Brady* evidence on cross-examination is strong evidence that no prejudice occurred. *See, e.g., Gardner v. Fisher*, 556 F. Supp. 2d 183, 195 (E.D.N.Y. 2008) ("The defense was not prejudiced by learning at the last minute [of an exculpatory statement], since the defense made effective use of this statement at trial through extensive cross-examinations. . . . This is an adequate remedy for late *Brady* disclosure."); *see also U.S. v. Coppa*, 267 F.3d 132, 142 (2d. Cir. 2001) ("[W]e have never interpreted due process of law as requiring more than that *Brady*

material must be disclosed in time for its effective use at trial") (internal citations omitted).

Moreover, the Court agrees with the Appellate Division that there is no reasonable probability that the outcome of the *Wade* hearing would have been different had the *Brady* material been timely disclosed. As respondent correctly argues, the primary purpose of a *Wade* hearing is to investigate whether the procedures used by the police were unduly suggestive. "The ultimate questions [decided at a *Wade* hearing] are whether the pretrial proceedings have been conducted in a manner that was unnecessarily suggestive and whether, in all the circumstances, there is a very substantial likelihood of irreparable misidentification." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). Accordingly, the court must perform a "a one-step or two-step inquiry. The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. <u>If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification</u>." *Id*. (emphasis added).

Here, the trial court concluded that the procedures used by the police (namely, the photographic array) were not unduly suggestive. Petitioner has not identified any evidence that would reasonably call that conclusion into question - indeed, Mr. Torres' grand jury testimony related to his own certainty about the

identification, not to any conduct by the police. Under these circumstances, Mr. Torres' certainty (or lack thereof) regarding his identification of petitioner simply was not relevant to admissibility, which is what a pre-trial *Wade* hearing is used to ascertain. Questions regarding the weight to be given a particular identification are, of course, left to the jury, and in this case, the jury was fully aware of Mr. Torres' grand jury testimony. The Court therefore agrees with the Appellate Division's rejection of petitioner's argument and finds that it was neither contrary to, nor an unreasonable application of, established federal law.

### C. The Trial Court's Failure to *Sua Sponte* Reopen the *Wade* Hearing

Petitioner's second and final argument is that the trial court denied him due process by failing to *sua sponte* reopen the *Wade* hearing based on the prosecution's delayed disclosure of Mr. Torres' grand jury testimony. As set forth above, the Appellate Division denied this claim on the basis that it was unpreserved.

#### 1. Procedural Bar

As a threshold matter, respondent argues that this claim is procedurally barred on two separate bases. First, respondent contends that petitioner failed to properly exhaust his claim in the state courts, and that he is now prevented from doing so. Second, respondent contends that petitioner's claim was denied on

adequate and independent state law grounds. The Court agrees with respondent with respect to each of these arguments.

### a. Failure to Exhaust

It is well-established that a state inmate who seeks federal habeas review must first exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1). This is so because "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). "In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error." *Ortiz v. Heath*, 2011 WL 1331509, at *6 (E.D.N.Y. Apr. 6, 2011).

Additionally, "[i]n order to satisfy the exhaustion requirement, a prisoner must have fairly presented the same legal claim to the state courts that he presents in his federal habeas petition. Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, . . . [the petitioner] must put state courts on notice that they are to decide federal constitutional claims." *Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir. 1984). "[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a

lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

A claim may be deemed exhausted where further review is procedurally barred under state law. *See Ortiz*, 2011 WL 1331509, at *6 ("[B]ecause the exhaustion requirement 'refers only to remedies still available at the time of the federal petition, it is [also deemed] satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law.'") (quoting *Coleman v. Netherland*, 518 U.S. 152, 161 (1996)). However, "[w]here a procedural bar gives rise to exhaustion . . . it also 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Id.* (quoting *Netherland*, 518 U.S. at 162). "For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice, (*i.e.*, the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

In this case, respondent contends that petitioner failed to exhaust his claim because he did not cast it in constitutional terms when he raised it before the Appellate Division. The Court agrees. Petitioner's brief in the Appellate Division specifically addressed this argument as arising under New York Criminal Procedure Law § 710.40(4), which requires that a pretrial

determination be revisited where additional pertinent facts are discovered by the defendant.  In support of this argument, petitioner cited only state law cases, and did not argue that the trial court's failure to reopen the hearing constituted a due process violation.  Under these circumstances, petitioner cannot be said to have "fairly presented" his constitutional claim to the state court.  Accordingly, the Court finds that petitioner failed to exhaust his claim that the trial court violated his right to due process by not *sua sponte* reopening the *Wade* hearing.  Moreover, because petitioner clearly could have raised this issue in constitutional terms on direct appeal but did not do so, he is barred by New York law from seeking collateral review.  *See Ramirez v. Attorney General*, 280 F.3d 87, 96 (2d Cir. 2001) (claims not "fairly presented" on direct appeal are procedurally barred in the state courts).  As such, petitioner's claim is barred from federal habeas review, unless he can show either cause and prejudice, or actual innocence.

**b.    Independent and Adequate State Law Grounds**

Respondent also argues that petitioner's claim is barred because it was denied by the Appellate Division on independent and adequate state law grounds.  Again, the Court agrees.

"The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the

Supreme Court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus" and "applies whether the state law ground is substantive or procedural." *Id.* (internal quotation omitted). Accordingly, "[i]f a state court clearly and expressly states that its judgment rests on a state procedural bar[,] this constitutes an independent and adequate state ground, and the federal court must deny habeas relief." *Green v. Keyser*, 2017 WL 5125533, at *6 (S.D.N.Y. Nov. 1, 2017) (internal quotation omitted).

In this case, the Appellate Division (which was the last state court to render judgment), expressly found that petitioner's claim that the trial court should have *sua sponte* reopened the *Wade* hearing was unpreserved. Under New York law, a criminal defendant who does not move to reopen a suppression hearing is barred from arguing on appeal that the trial court's failure to do so *sua sponte* was error. *See, e.g., People v. Gamble,* 137 A.D.3d 1053, 1056(2d Dep't 2016); *People v. Canteen*, 295 A.D.2d 256, 256 (1st Dep't 2002); *People v. Hankins*, 265 A.D.2d 572, 572 (2d Dep't 1999).

Here, petitioner did not ask the trial court to reopen the suppression hearing, even after the jury at petitioner's first trial failed to reach a verdict on the murder count, thereby necessitating a second trial. As such, under New York law, his claim was unpreserved, and this constituted an adequate and independent state law basis for denial by the Appellate Division. *See Sheard v. Conway*, 2012 WL 5603343, at *1 (E.D.N.Y. Nov. 15, 2012) (petitioner's claim that identification should have been suppressed was barred on independent and adequate state law grounds where petitioner failed to move to reopen suppression hearing and the Appellate Division found that the claim was unpreserved).

### c. **Petitioner Cannot Overcome the Procedural Bar**

Because petitioner's claim is procedurally barred, he can seek habeas relief only if he can show either cause and prejudice or that a fundamental miscarriage of justice will ensue if his claim is not considered (*i.e.* that he is actually innocent). Petitioner cannot meet either of these standards.

Petitioner has not identified any cause for his failure to move to reopen the suppression hearing, or for his failure to cast his claim in constitutional terms on direct appeal. Moreover, petitioner cannot show prejudice, because his claim is without merit. As discussed above, the new facts revealed by Mr. Torres' grand jury testimony did not bear on the suggestiveness of the procedures used by the police, which is the ultimate issue that the

trial court had to consider. Under these circumstances, the Court cannot find that the trial court's failure to *sua sponte* reopen the *Wade* hearing constituted a due process violation.

Petitioner also has not claimed that he is actually innocent, nor would the record support a finding to that effect. Accordingly, petitioner cannot overcome the procedural bar, and is not entitled to habeas relief.

## IV. Conclusion

For the foregoing reasons, the petition (Docket No. 1) is denied and dismissed. No certificate of appealability shall issue because petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether th[is] . . . [C]ourt was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore the Court denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal *in forma pauperis* must be made to the Second Circuit Court of Appeals in accordance with Fed. R. App. P. 24(a)(1), (4), & (5). The Clerk of the Court is instructed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

           s/Michael A. Telesca

           _____
           HONORABLE MICHAEL A. TELESCA
           United States District Judge

DATED: Rochester, New York
     November 21, 2017